IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JERRY BURKHART, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:22-CV-1026-RP |
| | § | |
| UNIVERSITY INTERSCHOLASTIC | § | |
| LEAGUE, et al., | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court is Defendants University Interscholastic League, et al.'s ("Defendants")

Motion to Dismiss for lack of subject-matter jurisdiction and failure to state a claim. (Dkt. 27).

Plaintiff Jerry Burkhart filed a response, (Dkt. 29), and Defendants filed a reply, (Dkt. 31). Having

considered the parties' briefs, the record, and the relevant law, the Court finds that the motion

should be granted.

**I. BACKGROUND**

Burkhart alleges the following facts: Burkhart is the head football coach of the six-man

football team at Richland Springs High School, located in Richland Springs, Texas. (Compl., Dkt. 1-

4, at 5). According to Burkhart, he is under a two-year contract with the high school to serve as head

coach until 2024. (*Id.*). The alleged events at issue began when a student football player ("the Student

Athlete") at Mullin High School, started talking to his parents about transferring from Mullin High

School to Richland Springs. (*Id.*). Burkhart states that Mullin High School Head Coach Brent

Williamson met with the Student Athlete on August 1 and the Student Athlete's dad on August 2,

2022, presumably to discuss his desire to transfer. (*Id.* at 6). Two days later, Williamson sent a text to

Burkhart, accusing him of having improperly contacted the Student Athlete. (*Id.*). Burkhart denied

having any contact with the Student Athlete or knowing what Williamson was talking about. (*Id.*).

Five days later, on August 8, Burkhart received a call from the Student Athlete, where he asked Burkhart what he had to do to transfer to Richland. (*Id.*). Burkhart claims that he instructed the Student Athlete that he would not be able to transfer for athletic purposes and would have to talk to his school administration's superintendent. (*Id.* at 7). The call lasted fourteen minutes. (*Id.*). Burkhart received another call on August 10, where he again told the Student Athlete that he would have to talk to his school's administration. (*Id.*).

On August 15, Williamson filed a complaint with District 16 of the University Interscholastic League ("UIL") accusing Burkhart of having attempted to recruit the Student Athlete in violation of UIL rules. (*Id.* at 13). The UIL District Executive Committee ("DEC") held a hearing on the matter, where it heard from both Burkhart and the Student Athlete. (*Id.*). Burkhart contends that, during the hearing, the DEC focused exclusively on the length of the call, despite Burkhart and the Student Athlete allegedly both confirming that Burkhart had not attempted to recruit him. (*Id.*). Nonetheless, the DEC found that Burkhart, along with Richland Springs High School, was guilty of recruiting the Student Athlete. (*Id.*). Burkhart appealed to the State Executive Committee ("SEC"). (*Id.*). Plaintiff contends that the SEC Chair was openly hostile to him and that the hearing consisted exclusively of lectures on the "Coach's code of honor" and Burkhart's alleged impropriety. (*Id.* at 9). The SEC found Burkhart guilty of recruiting and suspended him from coaching at any UIL school for three years. (*Id.*).

On October 7, 2022, Burkhart filed suit against UIL and the members of the SEC in Travis County State Court, alleging a violation of his due process rights. (Compl., Dkt. 1-4, at 5). His petition sought a declaratory judgment that Section 409 of the UIL Constitution is impermissibly vague under the First Amendment and a temporary restraining order that would enjoin the Defendants from enforcing their suspension. (*Id.* at 15). Defendants removed the case to this Court on October 12, 2022. (Notice, Dkt. 1). The next day, Burkhart filed a motion for a temporary

restraining order. (Mot. TRO, Dkt. 6). The Court held a hearing on October 14 and denied it on the record, holding that Burkhart had failed to show both a likelihood of success on the merits and irreparable harm. (Minute Entry, Dkt. 8). Burkhart filed an amended complaint on October 27 and another on November 21, 2022. (Am. Compl., Dkt. 13; 2d Am. Compl., Dkt. 22).

On December 6, 2022, Defendants filed a joint motion to dismiss. (Mot. Dismiss, Dkt. 27). Defendants argue that Burkhart lacks standing because his alleged loss of income and employment is hypothetical and speculative. (*Id.* at 7–9). In addition, Defendants argue that Burkhart has not stated a plausible claim for several reasons, including the argument that he does not have a protected property or liberty interest in coaching, that he received adequate due process, that he fails to state a facial or as-applied vagueness claim, that the challenged rule does not violate his free speech rights, and that his suspension did not violate his equal protection rights. (*Id.* at 10–27).

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in

the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th

Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not

consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to

dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d

770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir.

2009)).

### III. DISCUSSION

Defendants move to dismiss the complaint for both a lack of subject-matter jurisdiction and

failure to state a claim. (Mot. Dismiss, Dkt. 27). The Court will first address Burkhart's standing

before turning to the merits of his claims.

### A. Standing

Defendants challenge whether Burkhart has standing to bring suit. (*Id.* at 6–7). To

demonstrate standing, a plaintiff must show "(1) an injury in fact, (2) a sufficient causal connection

between the injury and the conduct complained of, and (3) a likelihood that the injury 'will be

redressed by a favorable decision." *Crane v. Johnson*, 783 F.3d 244 (5th Cir. 2015) (quoting *Lujan v.

Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (cleaned up). "At the pleading stage, general factual

allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss

we presume[e] that general allegations embrace those specific facts that are necessary to support the

claim." *Lujan*, 504 U.S. at 560–61.

Defendants argue that Burkhart has not suffered a concrete, particularized injury because he

has not been terminated and he is still employed as an Athletic Director by Richland Springs High

School. (Mot. Dismiss, Dkt. 27, at 7–8). While Burkhart's coaching suspension may not be enough

to show irreparable injury or even a strong property interest under the Due Process Clause, it is still

sufficient for Article III standing. *See, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016), *as revised*

(May 24, 2016) ("[W]e have confirmed in many of our previous cases that intangible injuries can

nevertheless be concrete."). It is well established that the Due Process Clause encompasses the right to follow a chosen profession and livelihood. *See, e.g.*, *Cowan v. Corley*, 814 F.2d 223, 227–28 (5th Cir. 1987) (collecting cases). Burkhart is suffering a concrete, particularized injury in that he desires to coach his football team but cannot do so because of the UIL suspension. (2d Am. Compl., Dkt. 22, at 21). In addition, he asserts that the suspension interferes with his contract to coach for Richland Springs because it effectively renders him a coach in name only and because he cannot perform any of the duties actually expected of a coach as required by his contract. (*Id.*). These injuries are traceable to Defendants, as the official directors of the UIL SEC, and may be redressed by a judgment that the UIL rules are unconstitutional either on their face or as applied.

Burkhart also alleges that he is injured because he may lose his job as a result of the suspension. (2d. Am. Compl., Dkt. 22, at 21). Defendants argue that this fear is entirely speculative, because the future job loss is based only on his subjective belief. (Mot. Dismiss, Dkt. 21, at 8). Ultimately, Burkhart only challenges his suspension and does not bring suit challenging any future termination.[1] Because he does not challenge his alleged future termination, it does not matter that he would lack standing to bring that claim. As he is suffering an ongoing Article III injury related to his UIL suspension, he has standing to bring that claim against UIL.

### B. Due Process

Defendants next move to dismiss Burkhart's complaint because it does not state a violation of his Due Process rights. (Mot. Dismiss, Dkt. 27, at 11). To prevail on a procedural due process claim, a plaintiff must show "(1) they possess a property or liberty interest that is protected by the due process clause, and (2) the defendant's procedures are constitutionally inadequate." *Mathews v.*

---

[1] In *Ramos v. Midland College*, this Court granted the defendant's motion to dismiss for lack of standing where the football coach claimed only a possible future job loss. No. MO17CV00083RAJDC, 2017 WL 10841724 (W.D. Tex. June 29, 2017). Unlike *Ramos*, however, Burkhart also alleges the injury of losing out on his ability to coach, in addition to the future job loss. The ongoing deprivation of the ability to pursue his given profession for two years constitutes an injury, even if he is still paid while suspended.

*Eldridge*, 424 U.S. 319, 333 (1976). While Defendants contest both grounds, because the Court finds that the procedures were adequate, it does not address whether the Due Process clause protects against suspension with pay of the ability to coach football at a particular high school.

"The familiar procedural due process inspection instructed by *Mathews v. Eldridge*" governs this case. *Nelson v. Colorado*, 581 U.S. 128, 134 (2017). The three *Mathews* factors are: (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest, and the probable value of additional or substitute procedural safeguards, and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335. Defendants argue that the UIL's hearings, both before the DEC and SEC, were sufficient to satisfy Burkhart's Due Process rights. (Mot. Dismiss, Dkt. 27, at 14–15).

To the first *Mathews* factor, the protected interest is relatively minimal. Burkhart characterizes his liberty and property interest as his "job and livelihood and the ability to work in his chosen profession of high school football coach." (Pl.'s Resp., Dkt. 29, at 8, 11). But Burkhart has not been deprived of his job and livelihood, because he is suspended *with pay*. (Mot. Dismiss, Dkt. 27, at 8). Plaintiff has not been terminated from his job, lost out on any sort of benefits, or been fined. (*Id.*). His private interest is simply to coach football (which Burkhart may still do at other non-UIL schools). While Burkhart may feel passionately about coaching his football team, this is a comparatively weak interest relative to loss of social security benefits, welfare, or a constitutional right. *See Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 754 n.3 (5th Cir. 1986) *aff'd in part and remanded in part on other grounds* 491 U.S. 701 (1989) ("Although the governmental employer may specifically create a property interest in a noneconomic benefit—such as a particular work assignment—a property interest in employment generally does not create due process property protection for such benefits."). Moreover, the deprivation is only temporary, as Burkhart may still coach at Richland

Case 1:22-cv-01026-RP   Document 34   Filed 04/13/23   Page 8 of 14

Springs after his suspension is ended. While he fears that he may be fired during the interval, that fear is speculative. If Richland Springs does indeed terminate his employment, then Burkhart can assert that Due Process claim at that time, but he cannot claim that UIL has deprived him of a property interest in employment when there is no indication such a termination has happened or is imminent.

Second, the risk of erroneous deprivation is minimal. Burkhart received notice of the time, date, and location of the hearing and evidence against him. (Mot. Dismiss, Dkt. 27, at 15). Burkhart was allowed to introduce evidence of his own. (*Id.*). He submitted arguments to the DEC in a formal hearing on the record. (*Id.*). The process was repeated again on appeal to the SEC. (*Id.*). Burkhart's participation in two formal, quasi-judicial proceedings with the right to introduce evidence and testimony is strongly indicative that minimum due process was met. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (internal quotations omitted). Given the lengthy, formal, and repeated hearings on Plaintiff's alleged UIL violations, the risk of erroneous deprivation is minimal.

Burkhart contends that his Due Process rights were violated because the hearing was not "meaningful." (Pl.'s Resp., Dkt. 29, at 15–16). For example, he argues that he was not provided counsel, given the opportunity to cross-examine witnesses, or make arguments uninterrupted. (*Id.*). But hearings do not need to mirror federal judicial proceedings to satisfy the minimum standards of Due Process. *See Boddie v. Connecticut*, 401 U.S. 371, 378 (1971) ("The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings."). In *Shawgo v. Spradlin*, the Fifth Circuit held that a hearing still constituted a meaningful opportunity to be heard when the plaintiff was allowed to offer evidence and testimony, even when the hearing committee excluded key pieces of evidence. *Shawgo v. Spradlin*, 701 F.2d 470, 480 (5th Cir. 1983) ("We are nevertheless unable to agree that the

Commission's rejection of his contentions was so arbitrary and unreasonable as to implicate

a due process issue of a denial of a meaningful opportunity to be heard."). In short, even accepting

Burkhart's allegations that the committee members acted coarsely, the hearings were adequate to

satisfy the requirements of due process. Burkhart does not cite any modern cases which have held

that brusque conduct alone can render a hearing invalid. (Pl.'s Resp., Dkt. 29, at 10–11).

Accordingly, the UIL hearings minimized the risk of erroneous deprivation and did not violate

Burkhart's Due Process.

Finally, the public interest factors weigh strongly in Defendants' favor. The public interest

factor "includes the administrative burden and other societal costs that would be associated with"

additional protections. *Mathews*, 424 U.S. at 347. Here, the parties focus on whether UIL's burdens

of proof in its hearing violate Due Process. (Mot. Dismiss, Dkt. 27, at 16; Pl.'s Resp., Dkt. 29, at 11–

13). In relevant part, Section 410 of the UIL Constitution states,

> If a District Executive Committee or the State Executive Committee
> determines that a complaint or report of a violation has enough validity
> or substance to hold a hearing, the burden by the preponderance of
> the evidence to disprove the allegations at issue rests with the member
> school, member school district or covered school district personnel
> charged with the violation.

(Mot. Dismiss, Dkt. 27, at 16).

Burkhart argues that it is unconstitutional for UIL to place the burden of proof on the

employee at the hearing. (Pl.'s Resp., Dkt. 29, at 11–13). But Burkhart again provides no citations to

cases holding that such a burden-shifting scheme is unconstitutional. (*Id.*). To the contrary, in a 2009

Louisiana case, a group of plaintiffs brought a challenge to a city ordinance wherein traffic cameras

captured images of vehicles that were either speeding or violating red light signals. *Ware v. Lafayette

City-Par. Consol. Gov't*, No. CIV.A. 08-0218, 2009 WL 5876275, at *1 (W.D. La. Jan. 6, 2009). The

city ordinance created a rebuttable presumption that the vehicle's registered owner was the violator

and the plaintiffs alleged that this rebuttable presumption violated their due process rights by

shifting the burden of proof to them. *Id.* The court disagreed, holding that such civil presumptions do not contravene the constitutional protections of due process. *Id.* Beyond *Ware*, courts have routinely held that burden-shifting may be permissible in certain civil instances. *Agomo v. Fenty*, 916 A.2d 181 (D.C. 2007) ("[P]resumption of liability is not a novel concept in civil cases."); *Mobile, Jackson & Kansas City R.R. Co. v. Turnipseed*, 219 U.S. 35, 43 (1910) ("That a legislative presumption of one fact from evidence of another may not constitute a denial of due process of law . . . ."). As in *Ware*, the committee found that the evidence showed a prima facie violation of UIL rules, and then shifted the burden to Plaintiff to disprove that conclusion. The fact that UIL shifts the burden of proof to the defending party after a prima facie violation is found is not a per se violation of the U.S. Constitution.

In total, Burkhart does not have a strong property or liberty interest in performing his duties as high school head coach. The procedures were more than adequate to protect against the risk of error. And finally, there is no reason to believe that additional protections would have safeguarded against wrongful deprivation. Accordingly, because all three *Mathews* factors favor Defendants, the UIL hearings and decision on Burkhart's suspension did not violate his Due Process rights.

### C. Vagueness Challenge

#### 1. Facial Challenge

Burkhart also alleges that Section 409 of the UIL Constitution, which prohibits recruiting high school players, is void for vagueness. (2d Am. Compl., Dkt. 22, at 16–18). The UIL Constitution defines "recruit" as:

> Recruit: to encourage a student in any way to change schools for the purpose of participating in UIL activities at any grade level. It could include offering a student or the student's parent cash, waiver of tuition, board or lodging, transportation, promise of better conditions at the participant school or on its team, a job or other valuable consideration to induce the student to enroll in a participant school.

(*Id.* at 13–14).

The appendix to the UIL Constitution also states that coaches shall "not recruit or entice any student to attend and participate at your school. Any inquiries from students outside your school district or from another high school in a multiple-high school district should be directed to the school superintendent or high school principal." (Mot. Dismiss, Dkt. 27, at 19).

Burkhart argues that the definition is vague on its face or as applied to his conduct. (*Id.* at 16–18). Courts have long held it is a "basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Def. Distrib. v. U.S. Dep't. of State*, 121 F. Supp. 3d 680, 700 (W.D. Tex. 2015) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). "[T]he void for vagueness doctrine addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). A statute is vague in all its applications when "men of common intelligence must necessarily guess at its meaning." *U.S. v. Clark*, 582 F.3d 607, 613 (5th Cir. 2009) (citations omitted). A statute may be overbroad either because it fails to provide the kind of notice that will enable ordinary people to understand what conduct it prohibit or it may authorize and even encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

The prohibition on recruiting provides sufficient guidance to put parties on notice of infringing conduct. The UIL Constitution applies only to communications related to "participating in UIL activities." (Mot. Dismiss, Dkt. 27, at 19). A violating coach must actually be "encouraging" the participation. (*Id.*). The UIL Constitution provides examples of the types of activities that could constitute a violation. Because the UIL Constitution defines "recruit" in a readily understandable manner with examples of infringing conduct and directions on how to avoid a violation, it is not facially vague.

Nor does Section 409 allow for discriminatory or arbitrary enforcement. An unconstitutionally vague law invites arbitrary enforcement in this sense if it leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case or permits them to prescribe the sentences or sentencing range available." *Beckles v. United States*, 580 U.S. 256, 266 (2017) (cleaned up). Such challenges are normally reserved for penal statues, rather than civil sporting codes. This distinction is important, because UIL does not sua sponte prosecute violations. Rather, as the parties point out in their discussion on Due Process, a person must first file a complaint with UIL. (*See* Mot. Dismiss, Dkt. 27, at 16). UIL then investigates the complaint, and if it determines there is evidence of a prima facie violation, then it will hold a hearing on the matter. (*Id.*). Because the state must first find a prima facie violation after an independent third party submits a complaint with evidence, the risk of arbitrary enforcement is diminished.

And on its face, nothing about Section 409 of the UIL Constitution invites arbitrary enforcement. Burkhart argues that the rule is "so overbroad, vague, and ambiguous as to leave it solely up to the arbitrary and entirely subjective decision of" UIL, leading to "arbitrary and inconsistent" outcomes. (2d Am. Compl., Dkt. 22, at 17). But the mere fact that UIL might reach different decisions on different cases does not render Section 409 void. Courts regularly reach differing decisions on cases involving the same law, and that does not render those laws void. Because Burkhart fails to identify at all how the law allows for arbitrary enforcement or is unconstitutionally vague, his overbreadth challenge fails.

### 2. As-Applied Challenge

Burkhart's as-applied challenge is equally unavailing. Burkhart alleges that Section 409 is unconstitutionally vague as applied because UIL imposed a three-year suspension on him for a cellphone call that lasted 14 minutes. (*Id.* at 17–18). However, a "statute is not unconstitutionally

vague merely because a company or an individual can raise uncertainty about its application to the facts of their case," but "only where no standard of conduct is outlined at all; when no core of prohibited activity is defined." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 509 (5th Cir. 2001) (citation omitted). Here, Burkhart knew that recruiting was prohibited and that he could not encourage the Student Athlete to change high schools under UIL rules. (2d Am. Compl., Dkt. 22, at 6–7). Burkhart understood what conduct was prohibited, and while he contends that UIL had insufficient evidence to find a recruiting violation, that does not render Section 409 vague as applied.[2] Because Section 409 defines recruiting in reasonable specificity and Burkhart understood that meaning, his as-applied challenge fails.

### D. Equal Protection

Finally, Burkhart brings an Equal Protection Clause claim under the Fourteenth Amendment. (2d Am. Compl., Dkt. 22, at 22). He argues that he was treated different from other coaches who have faced far smaller punishments for recruiting violations. (*Id.*). As Defendants point out, this is a "class-of-one" challenge, which the Fifth Circuit has held is inapplicable in the public employment context. *See Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 586 (5th Cir. 2016); *Chavers v. Morrow*, 449 Fed. Appx. 411 (5th Cir. 2011). Burkhart argues that this is not a public employment case because it involves his coaching suspension by UIL, not his employer's determination of whether he can keep his job. (Pl.'s Resp., Dkt. 29, at 19). But the holding of *Integrity Collision* precluding class-of-one challenges extends beyond public employment into other discretionary decisions by governments. 837 F.3d at 586. Here, the choice of punishment by the UIL

---

[2] Plaintiff also argues that the SEC order is unconstitutionally vague because it suspends him from coaching for three years and he does not understand what conduct constitutes "coaching." (2d Am. Compl., Dkt. 22, at 18). The mere fact that Plaintiff can argue the duties of an athletic director might occasionally overlap with those of a coach does not render the order vague. *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 509 (5th Cir. 2001). Nor does Plaintiff offer any support for his implied contention that a state disciplinary agency must sufficiently define every key word in its hearing decisions in order to survive Due Process.

committee may depend on dozens of factors unavailable to a district court, any one of which could render the suspension rational. "[A]llowing equal protection claims on such grounds 'would be incompatible with the discretion inherent in the challenged action.'" *Wood v. Collier*, 836 F.3d 534, 541 (5th Cir. 2016) (quoting *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 604 (2008)). Regardless of whether this is strictly a public employment case or not, it involves the same considerations. The UIL committees must necessarily make individualized determinations of what sanctions are appropriate for code violations. That does not render those decisions in violation of the Equal Protection Clause because the punishments may differ. As the Supreme Court has held, this is a case where "treating like individuals differently in an accepted consequence of the discretion granted" to the government. *Engquist*, 553 U.S. at 604. While Burkhart's suspension may have been comparatively harsh, it was a result of the inherit discretion involved in individualized hearings necessary to investigate violations and determine the appropriate sanctions.

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Defendants' motion to dismiss, (Dkt. 27), is **GRANTED**. Burkhart's claims are **DISMISSED WITHOUT PREJUDICE**.

Final judgment will follow in a separate order.

**SIGNED** on April 13, 2023.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE